UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEXANDER HALLUMS,
        Petitioner,


        V.                                        CIVIL ACTION NO.
                                                  16-11921-NMG


MATTHEW DIVRIS,
        Respondent.

**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE PETITION FOR A WRIT OF HABEAS CORPUS**
**(DOCKET ENTRY # 23)**

**February 22, 2021**

**BOWLER, U.S.M.J.**

Respondent Matthew Divris ("respondent"), Superintendent at

North Central Correctional Institution ("NCCI") in Gardner,

Massachusetts, seeks to deny a petition for writ of habeas corpus

(Docket Entry # 1) filed by petitioner Alexander Hallums

("petitioner"), an NCII inmate, under 28 U.S.C. § 2254.[1]  (Docket

Entry # 1, p. 2).[2]  Petitioner challenges his convictions for:

_____

[1]   The petition names Collette Gogeun as the respondent and
the individual having custody of petitioner.  (Docket Entry # 1,
p. 2).  This court takes judicial notice that the superintendent
of NCCI is Matthew Divris.  See, e.g., Brown v. McKee, Civil No.
2:07-cv-14038, 2010 WL 3906092, *4 (E.D. Mich. Sept. 30, 2010)
(taking judicial notice of warden at facility of incarceration
and substituting warden as respondent); Fed. R. Civ. P. 25(d).
Matthew Divris is therefore substituted as respondent in lieu of
Collette Gogeun and the caption of this action changed
accordingly.

[2]   Page numbers refer to the page numbers in the upper,
right-hand corner of the docketed filings.

(1) aggravated rape in violation of Massachusetts General Laws chapter 265 ("chapter 265"), section 22(a); and (2) larceny from a person in violation of Massachusetts General Laws chapter 266 ("chapter 266"), section 25. (Docket Entry # 1, p. 2) (Docket Entry # 14, S.A. 1, 5, 41, 87). As grounds for relief, the petition alleges three instances of misconduct by the prosecutor during closing argument consisting of "vouching for the credibility of" the victim, "appealing to the sympathies and inflaming the passions of the jurors," and "using rhetorical questions which had the effect of shifting the burden of proof onto" petitioner. (Docket Entry # 1-1, pp. 1, 9-10, 15, 17).

Respondent seeks to deny the petition on the basis of a procedural default given the absence of an objection to the prosecutor's closing argument and the reliance by the Massachusetts Appeals Court ("the appeals court") on this independent and adequate state-law ground to deny relief. In the alternative, respondent submits that the appeals court's rejection of the grounds was not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("section 2254(d)"). Respondent also argues that petitioner is not entitled to habeas relief applying de novo review as well as harmless error under Brecht v. Abrahamson, 507 U.S. 619, 630-631 (1993). (Docket Entry # 23).

2

An evidentiary hearing is not warranted.  The grounds for relief pertain to the prosecutor's closing argument, which is fully set out in the state court trial records.  It is therefore highly unlikely that an evidentiary hearing would elicit additional factual support for the petition that is absent from the state court record.  See Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### PROCEDURAL BACKGROUND

In April 2012, a grand jury sitting in Massachusetts Superior Court (Hampden County) ("trial court") issued a two-count Indictment charging petitioner with: (1) aggravated rape in violation of chapter 265, section 22(a) (Count One); and (2) larceny from a person in violation of chapter 266, section 25 (Count Two).  (Docket Entry # 14, S.A. 42-43).  In a February 2014 jury trial before an associate justice of the trial court ("the trial judge"), a jury found petitioner guilty of both offenses.  (Docket Entry # 14, S.A. 1, 5, 415).  In March 2014, the trial judge sentenced petitioner to "not less than nine years and not more than ten years in Massachusetts prison" on Count One and two years probation on Count Two.  (Docket Entry # 14, S.A. 6, 136

Petitioner appealed the convictions raising the same prosecutorial misconduct claims that the petition asserts.

(Docket Entry # 14, S.A. 11-33, 44) (Docket Entry # 1-1).  In
March 2016, the appeals court affirmed the convictions.
Commonwealth v. Hallums, No. 14-P-1160, 2016 WL 889181 (Mass.
App. Ct. Mar. 9, 2016) (unpublished).  The Massachusetts Supreme
Judicial Court ("SJC") summarily denied petitioner's application
for further appellate review ("ALOFAR"), and petitioner
subsequently filed this action.  (Docket Entry # 14, S.A. 121).

<u>FACTUAL BACKGROUND</u>

The convictions arise out of an incident that occurred in
Springfield, Massachusetts in late February 2012.  Resolving
conflicts and conflicting inferences in favor of the jury's
verdict, the facts presented to the jury include the following.[3]

At around 6:00 or 7:00 p.m. on February 28, 2012, the
victim, 44 years old at the time, was walking up and down Union
Street in Springfield looking for drugs.  (Docket Entry # 14,
S.A. 296-298, 312-313).  She described herself as addicted to
drugs at that time with a 20-year history of struggling "on and
off" with the addiction.  (Docket Entry # 14, S.A. 297, 312).
Crack cocaine was her "drug of choice," and she consumed it as

---

[3]  In reviewing a state-court conviction, a federal "habeas
court may not freely reweigh competing inferences but must accept
those reasonable inferences that are most compatible with the
jury's verdict."  Magraw v. Roden, 743 F.3d 1, 7 (1st Cir. 2014);
accord Gomes v. Silva, 958 F.3d 12, 23 n.7 (1st Cir. 2020)
(federal habeas court "'presume[s] that the trier of fact
resolved any'" conflicting inferences "in favor of the
prosecution," and "'defer[s] to that resolution'") (internal
citations and ellipses omitted).

4

soon as she procured it.  (Docket Entry # 14, S.A. 312, 314-315).
She used heroin "some of the time" and admitted to using alcohol
as well.  (Docket Entry # 14, S.A. 316).  On cross-examination,
she denied ever blacking out "in the 20 years as an active
addict."  (Docket Entry # 14, S.A. 316).  On the day in question,
she "was prostituting" in order to get her "next fix" of drugs
and had been drinking alcohol.[4]  (Docket Entry # 14, S.A. 298,
311-312).

While the victim was walking down Union Street, petitioner
approached her from behind, asked her if she "wanted to do
something, and stated he would give her "some money and some
weed" if she agreed.  (Docket Entry # 14, S.A. 301).  Without
discussing the matter further, the victim accompanied petitioner
to the back of an abandoned house.  (Docket Entry # 14, S.A. 301-
303).  As they walked to the back of the house, she agreed to
perform oral sex in exchange for "[t]en dollars and a bag of weed
up front."[5]  (Docket Entry # 14, S.A. 302-303).  Once in the back
of the abandoned building, petitioner put on a condom and the
victim "started performing oral sex."  (Docket Entry # 14, S.A.

---

[4]   One of the closing arguments petitioner challenges is
the prosecutor's statements that the victim "'had a very troubled
life,'" "'struggled with addiction,'" and "'was desperate'" as
well as "'vulnerable.'"  (Docket Entry # 1-1, p. 16).  The above
testimony by the victim provides a basis for the prosecutor's
statements, which the appeals court determined "were fair
inferences that the prosecutor could suggest to the jurors."
Commonwealth v. Hallums, 2016 WL 889181, at *2.

[5]   See the previous footnote.

303).  When she told him "it was taking too long" and she would return the money, petitioner offered the victim "a couple dollars" more to perform vaginal intercourse.  (Docket Entry # 14, S.A. 303-304, 314).  She agreed.  (Docket Entry # 14, S.A. 303).

With petitioner still wearing the condom, the victim "started having [vaginal] sex" but petitioner "was getting really rough."  (Docket Entry # 14, S.A. 303-304).  As a result, the victim told petitioner he could have his money back, and she did not "want to do it no more."[6]  (Docket Entry # 14, S.A. 303-304).  Petitioner then "took his money, pushed [the victim] to the ground," and said, "Bit**, you're going to finish or I'll brick you."  (Docket Entry # 14, S.A. 304).  A brick lay on the ground next to petitioner.  (Docket Entry # 14, S.A. 304).  Describing herself as "real upset," she pleaded with petitioner "just don't hurt" me and told him she "would finish."  (Docket Entry # 14, S.A. 304).  Petitioner picked up a pint bottle from the ground and, while holding it over the victim's head, told her "he was going to bust [her] in the head with it."  (Docket Entry # 14, S.A. 304-305, 323-324).  With petitioner holding the glass bottle

---

[6]   On cross-examination, defense counsel asked the victim "[h]ow often in [her] career or in the time of [her] life when [she was] willing to trade sex for money did [she] offer to give the money back?"  (Docket Entry # 14, S.A. 312).  She replied, "Any time that I didn't want to continue."  (Docket Entry # 14, S.A. 312).  Defense counsel referenced this testimony during closing argument as one of several attacks he made to the victim's credibility.

over the victim's head, she finished by "performing oral sex," although she informed petitioner that she "didn't want to do it." (Docket Entry # 14, S.A. 284, 288, 305-306, 323-324).  She described herself as "scared" that "he was going to hit" her and upset that "he hurt [her]."[7]  (Docket Entry # 14, S.A. 306, 317-318).

    After petitioner finished, he "grabbed [the victim's] pocketbook and ran."  (Docket Entry # 14, S.A. 306).  The victim ran after him and called 911 on her cellular telephone, which she kept in her coat pocket.  (Docket Entry # 14, S.A. 307, 318).  She informed the 911 dispatcher that petitioner "snatched [her] pocketbook and ran."  (Docket Entry # 14, S.A. 307, 318).  She did not tell the dispatcher about the sexual assault because she "was an active addict" and known to the police "from being out on the street."  (Docket Entry # 14, S.A. 307, 324).  During the conversation, the victim grew frustrated with the dispatcher and eventually disconnected the call because the dispatcher "kept asking [her] the same questions" and she just "wanted somebody to respond."  (Docket Entry # 14, S.A. 318).  Still frustrated, she went to a girlfriend's house.  (Docket Entry # 14, S.A. 307).

---

    [7]  Petitioner challenges the prosecutor's statements during closing argument that the victim "'was scared, she was hurt.'" (Docket Entry # 1-1, p. 16).  The appeals court rejected the challenge because "[t]he evidence showed that the victim was scared and hurt."  Commonwealth v. Hallums, 2016 WL 889181, at *1.  The above testimony supports that finding.

In the meantime, the police responded to the scene, and one of the responding officers observed an individual matching the victim's description of the assailant. (Docket Entry # 14, S.A. 270). The assailant ran away, and another responding officer detained him nearby. (Docket Entry # 14, S.A. 270-271).

While the victim was at her girlfriend's house, her telephone rang several times. After not answering the calls a "couple of times," she picked up the phone and spoke to Detective James McCoy ("Detective McCoy") of the Springfield Police Department. (Docket Entry # 14, S.A. 275, 320-321). During the conversation, she agreed to meet Detective McCoy at a nearby store. (Docket Entry # 14, S.A. 275, 307-308). When Detective McCoy met the victim at the store, he described her as crying and upset. (Docket Entry # 14, S.A. 280). During this meeting, she told Detective McCoy about the assault and then went with him to a nearby street where police were detaining petitioner. Upon seeing petitioner, she made a positive identification.[8] (Docket Entry # 14, S.A. 280-282, 308, 321).

Thereafter, the victim proceeded to the abandoned house with Detective McCoy. At the rear of the house, she pointed out the empty bottle, and Detective McCoy observed "some bricks" on the ground as well as a used condom. (Docket Entry # 14, S.A. 283-

---

[8] At some point, she also identified her pocketbook. (Docket Entry # 14, S.A. 309).

284).  Another detective took pictures of the scene, and a second detective accompanied the group.  (Docket Entry # 14, S.A. 283).  After collecting evidence, Detective McCoy requested an ambulance, and the victim went to a hospital.  (Docket Entry # 14, S.A. 285-286, 309-310, 342).  Upon examination, a nurse observed a "raised black and blue mark on [the victim's] left foot" and "made a notation in the medical record that [the victim] displayed a half inch of redness along the right vaginal wall," which "was not within normal limits" for such an exam.[9] (Docket Entry # 14, S.A. 343).

The nurse also extracted a vaginal swab during the examination.  (Docket Entry # 14, S.A. 309, 342-343).  DNA testing of the vaginal swab and a swab of the interior of the condom yielded DNA profiles for each swab.  The DNA profiles from both swabs showed a mixture of DNA from "at least two individuals."  (Docket Entry # 14, S.A. 347-350).  A forensic scientist from the Massachusetts State Crime Lab testified that in cases of DNA mixtures from more than one person, major and minor DNA profiles are created.  A "major profile" refers to "the predominant DNA" in the mixture whereas "a minor DNA profile" refers to "DNA that's present in a smaller quantity."  (Docket Entry # 14, S.A. 344, 348-349).  The DNA profile of the vaginal

---

[9]   The above evidence provides additional support for the prosecutor's statement that the victim "was hurt" (Docket Entry # 14, S.A. 376).  See footnote seven.

swab excluded petitioner "as a source of this DNA mixture" and showed the victim as the major DNA profile. (Docket Entry # 14, S.A. 348). Petitioner was "the major DNA profile" for the DNA mixture on the swab from the interior of the condom and "[a] minor DNA profile obtained from this item yielded insufficient results for comparison." (Docket Entry # 14, S.A. 349).

A few hours after the incident, the victim went to a police station and spoke with "the police." (Docket Entry # 14, S.A. 321-322). At some point, she "admit[ted] to having the [bag of] weed" to the police. (Docket Entry # 14, S.A. 310-311).

Petitioner did not testify at the trial. Instead, he presented his case by cross-examining the three trial witnesses. In an opening statement as well as in closing argument, defense counsel acknowledged that petitioner engaged in larceny but asked the jury to return a "verdict of not guilty verdict for the rape because the sex was consensual." (Docket Entry # 14, S.A. 258, 360, 369).

## CLOSING ARGUMENTS

Defense counsel's closing argument preceded the prosecutor's closing argument. During closing argument, defense counsel repeatedly attacked the victim's credibility. He told the jury that the victim "created" the rape because of her anger at petitioner for stealing her pocketbook. (Docket Entry # 14, S.A. 360-361). Defense counsel argued that the victim told the truth

during the 911 call "in the heat of the moment," but then became
frustrated upon realizing the police were not going "to take her
seriously." (Docket Entry # 14, S.A. 361). Defense counsel then
suggested the following scenario to the jury:

> And so she hung up on the dispatcher and she didn't take the
> call. Ten to twenty minutes she hasn't answered their phone
> calls. She's back at a house where she's becoming angry.
> She's frustrated. She doesn't think this crime is going to
> be prosecuted. And then she thinks of a way it could be.
> She calls it a rape. Then it's not a pocketbook snatching.
> Then the police are going to take it as seriously as she is.
>
> And we know that [the victim] is a liar. We know that she
> lied on the stand. She lied on the stand, and I asked her--
> she's been a 20-year drug addict addicted to heroin,
> cocaine, alcohol[--]Have you ever blacked out in those 20
> years as an addict? No, never, not once. . . . Is that
> testimony that can be believed? . . . I submit to you it's
> not. That was not true.

(Docket Entry # 14, S.A. 362).

Defense counsel attacked the victim's credibility further by
reminding the jury "[s]he is a convicted felon"[10] and describing
her testimony as "inconsistent with what she actually says
happen." (Docket Entry # 14, S.A. 362-363). He pointed out
"that she claimed that she was hurt" with "a pain scale of eight"
at the hospital even though medical records state she was
"'ambulating with no difficulty.'" (Docket Entry # 14, S.A.
363). He reiterated her testimony that a Percocet pill had a

---

[10]   The jury heard the victim testify that she had a history
of arrests and convictions, including a 2006 conviction for
assault and battery with a dangerous weapon and three drug
convictions in 1995, 1997, and 2004. (Docket Entry # 14, S.A.
297, 319-320).

value of five to ten dollars and argued that "the injury[,] which she only really describes in the medical records[,] was clearly fabricated in an attempt to get a prescription for narcotics for which she was successful." (Docket Entry # 14, S.A. 323, 363, 368).

Using rhetorical questions, defense counsel added more reasons for the jury to disbelieve the victim:

> Why else should we not believe [the victim]?  Well, she talked about offering a refund.  And she began performing oral sex and it was taking too long and she offered a refund and gave the money right back.  And I asked her: Is that something you did a lot?  And she said: Oh, yeah.  I give refunds all the time.

> Does that make any sense?  This is someone who is so desperate for their next high that they [sic] are walking up and down Union Street in the dead of winter willing to do anything for ten dollars.  Does it have the ring of truth that she would so readily refund the money?

(Docket Entry # 14, S.A. 365-366).

In light of these arguments, the appeals court determined that "defendant advanced a strong challenge to the victim's credibility in his closing argument."  Commonwealth v. Hallums, 2016 WL 889181, at *1.  The prosecutor responded by also focusing on the victim's credibility in his closing argument.

The challenged portions of his argument relative to vouching and using rhetorical questions include the following:[11]

---

[11]  The alleged vouching and use of rhetorical questions arise from the same portions of the prosecutor's closing argument.  (Docket Entry # 1-1, pp. 11-14, 16-20).  Overall, this court considers the petition as raising a single ground for

> Now again, I want you to think back upon [the victim's]
> testimony before you.  Does she seem like a person that is
> going to hide the truth from anybody?  Did she seem casual
> and frank, almost exceedingly so with you?  [The victim],
> are you a prostitute?  Yes.  Have you done drugs your whole
> life?  Yes.  Have you ever been arrested before?  Yes.  Does
> she have anything to hide from you?[12]
>
> I suggest to you that in determining what you want to
> believe from [the victim], and I can't tell you what to
> believe,[13] what you should believe, but I can suggest to you
> that her extraordinary candidness and frankness with you
> should signal to you in your experience as people on this
> earth, people that are that frank with you, what else -- why
> would they make up other things?  She bared her soul to you.

---

relief, i.e., prosecutorial misconduct based on the prosecutor's
closing argument involving all three categories of misstatements.
   In the alternative, even considering dubitante the three
categories (vouching, appealing to the jury's emotions, and using
rhetorical questions) as raising separate prosecutorial
misconduct claims, the same reasons that foreclose relief on the
overarching, single ground for relief also preclude habeas relief
on each of these three grounds.  The petition itself is somewhat
ambiguous because underneath the headings for grounds one, two,
three, and four, the petition states, "See Attached Copy," thus
implying the existence of more than one ground for relief.
(Docket Entry # 1, pp. 6, 8, 9, 11).  The attached copy (Docket
Entry # 1-1) is petitioner's brief to the appeals court (Docket
Entry # 14, S.A. 12-33) in which he sets out a caption, which
includes the three categories or instances of the prosecutor's
improper comments, followed by subdivisions addressing each
category of improper comments.  (Docket Entry # 1-1, pp. 9-22).

   [12]   As reflected in the factual background, the prosecutor's
comments are based on the evidence or reasonable inferences from
the evidence.  (Docket Entry # 14, S.A. 297-298, 311-316, 319).
 They also respond to defense counsel's argument attacking the
victim's credibility and characterizing the victim as a
prostitute.  (Docket Entry # 14, S.A. 360, 362-369).

   [13]   As articulated by the Supreme Court, "Isolated passages
of a prosecutor's argument, *billed in advance to the jury as a
matter of opinion not of evidence*, do not reach the same
proportions" as a prosecutor's deliberate and repeated
"'misrepresentation' of a dramatic exhibit" during closing
argument.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 646 (1974)
(emphasis added).

(Docket Entry # 14, S.A. 371-372) (Docket Entry # 1-1, pp. 11, 17-18).

In response to defense counsel's argument that the victim fabricated the rape, the prosecutor included the following, purported vouching and rhetorical question in his closing:

> Now, think to yourselves this as well about cooking up the rape: Does it make any sense to you that [the victim] is still so pissed off at the police two years later that she would undergo a vaginal exam, a pelvic exam, and then come in here two years later and lie to you about something that defense counsel claimed didn't happen?[14]

(Docket Entry # 14, S.A. 373-374).

The prosecutor next recited the evidence that the victim told "the first police officer" she met that she was prostituting and "got raped."  (Docket Entry # 14, S.A. 374).  The prosecutor then asked the jury to consider:

> If she's going to be so candid and frank with the police that night, what makes you think that her testimony yesterday was any less candid or frank?  She's got nothing to hide here.  *She's got no reason to lie.  She told the police she was committing a crime and she told you the same*

---

[14]   As explained in <u>Donnelly</u>, "closing arguments . . . are seldom carefully constructed" and often result "in syntax left imperfect and meaning less than crystal clear."  <u>Donnelly</u>, 416 U.S. at 646-647.  Separately and as discussed elsewhere, the invited-response doctrine is one of several factors used in evaluating whether "improper statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Taylor v. Medeiros</u>, 983 F.3d 566, 572 (1st Cir. 2020) (discussing clearly established law and quoting <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly</u>, 416 U.S. at 643)).

*thing.*[15]

. . . if she's really making this up because she wants the police to take this seriously, which they did, then why bother telling the police that she's a prostitute?[16]

If you're going to make up a rape, why not really go for it? Sell it.  I was walking down the street, minding my own business, some strange man pulled me behind a building and raped me.  That's a good story, right?  Oh, but that's not what happened.  She told you what happened.  She told you: I was prostituting myself and it got out of hand and it went too far and I tried to stop him.  I offered him his money back.[17]

(Docket Entry # 14, S.A. 374-375).

In addition to the forgoing purported vouching and rhetorical questioning, the prosecutor allegedly appealed to the

---

[15]  Citing Commonwealth v. Beaudry, 839 N.E.2d 298, 306 (Mass. 2005), the appeals court viewed the above, italicized language as improper vouching and an error because "[a] prosecutor may not tell the jury that a victim has no reason to lie." Commonwealth v. Hallums, 2016 WL 889181, at *1.  As explained below, the appeals court conducted a miscarriage of justice analysis *after* finding this error.  See id. at *2.

[16]  Viewed for purposes of assessing the victim's credibility, Detective McCoy testified without objection that the victim told him she had an agreement with petitioner to have oral sex in exchange for ten dollars.  (Docket Entry # 14, S.A. 280-281, 291).  The above closing argument responds to defense counsel's closing argument and falls within the invited-response doctrine.  See Taylor, 983 F.3d at 572 (discussing clearly established law and citing Darden, 477 U.S. at 182); footnote 14 *supra*.

[17]  The above argument is based on the evidence and reasonable inferences therefrom.  (Docket Entry # 14, S.A. 303-304, 306, 311-314).  It also responds to defense counsel's statements that: the victim fabricated the rape in order for the police to take her complaint that petitioner stole her pocketbook seriously; and her testimony regarding the refund did not make "sense."  (Docket Entry # 14, S.A. 362, 365-364); see footnote 14 *supra*.

jurors' sympathies and inflamed the jurors' passions by

describing the victim as follows in closing argument:

> She's had a very troubled life.  She struggled with
> addiction for her almost entire adult life . . .
>
> . . . She was desperate.  Why would she offer a refund?
> Because she was scared.  That's why.  She didn't know what
> else to do because they [sic] were [sic] trapped behind an
> abandoned building with nobody else around and she was
> vulnerable.
>
> . . . She didn't really want the police involved because she
> was a prostitute, and that's why on the 911 call she just
> mentioned the pocketbook . . . She was scared, she was hurt
> . . .[18]

(Docket Entry # 14, S.A. 370, 375-376).

<u>DISCUSSION</u>

Petitioner argues that the above-summarized instances of

vouching, appealing to the juror's emotions, and rhetorical

questioning during the prosecutor's closing argument violated the

Sixth Amendment.  (Docket Entry # 1-1).  He acknowledges that

defense counsel did not object to the closing argument.  (Docket

Entry # 1-1, p. 10).

Respondent submits that the appeals court rejected the

prosecutorial misconduct claim(s)[19] based on the adequate and

---

[18]   Petitioner challenges the above statements by the
prosecutor that the victim "had a very troubled life," and was
"desperate," "scared," "vulnerable," and "hurt."  (Docket Entry #
1-1, p. 16).  As explained in footnotes four, five, seven, and
nine as well as the testimony referenced in these footnotes,
these statements are based on the evidence or reasonable
inferences therefrom.

[19]   See footnote 11 *supra*.

independent state-law ground of a miscarriage of justice in light of defense counsel's failure to object to the prosecutor's closing argument.  (Docket Entry # 23, pp. 8-9, 14-17). Alternatively, the appeals court's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent under section 2254(d)(1), according to respondent.  (Docket Entry # 23, pp. 10-13, 17-28).  Respondent also submits that any constitutional error fails to warrant habeas relief under the <u>Brecht</u> standard or de novo review. (Docket Entry # 23, pp. 13-14, 24, 26, 28).

For reasons discussed below, the appeals court conducted a merits-based review of the prosecutorial misconduct claims under a state-law standard that is functionally equivalent to the federal standard, <u>see</u> <u>Dagley v. Russo</u>, 540 F.3d 8, 15, 15 n.3, 17 (1st Cir. 2008), except for the single error based on the prosecutor's comment that the victim had "no reason to lie" (Docket Entry # 14, S.A. 374).  As to the former, the appeals court's decision was not contrary to or an unreasonable application of clearly established Supreme Court law thereby foreclosing review under section 2254(d)(1).  As to the latter, the appeals court reviewed the error under the state-law miscarriage of justice standard applicable when a defendant fails to object to a prosecutor's closing argument.  <u>See</u> <u>Commonwealth v. Kater</u>, 734 N.E.2d 1164, 1181 (Mass. 2000) (if "defendant makes

17

no timely objection to the prosecutor's closing argument, our review is limited to whether there was a substantial likelihood of a miscarriage of justice") (citing Commonwealth v. Johnson, 711 N.E.2d 578, 582 (Mass. 1999)).  Petitioner fails to argue cause and prejudice for the failure to object, which do not exist in any event, and the record does not establish actual innocence. Hence, habeas review of this purportedly improper comment is foreclosed based on the procedural default.  In the alternative, review of the purportedly improper comment under section 2254(d)(1) does not afford habeas relief.[20]  The following discussion elaborates and explains this reasoning.

I.   Section 2254(d)(1) Standard

     Section 2254(d)(1) review is decidedly deferential and "limited to determining whether the state courts' decision . . . 'was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.'"  Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting section 2254(d)(1)) (internal brackets omitted).  Under the first category, a state court's "adjudication is contrary to clearly established law if the state court '"applies a rule that contradicts the governing law set forth" by the Supreme Court or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

_____

     [20]  See footnote 23 *infra*.

18

Court] and nevertheless arrives at a result different from [its] precedent."'" <u>Chum v. Coyne-Faque</u>, 948 F.3d 438, 443 (1st Cir. 2020) (internal citations omitted and brackets in original), *cert. denied*, 141 S.Ct. 343 (Oct. 5, 2020) (No. 19-8866); <u>accord</u> <u>Ramdass v. Angelone</u>, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts").  Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'"  <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000) (quoting section 2254(d)(1) with ellipses and italics omitted).

An unreasonable application of clearly established federal law occurs if a state court decision "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." <u>White v. Woodall</u>, 572 U.S. 415, 426 (2014); <u>accord</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182-83 (2011).  In order to obtain federal habeas relief, "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" White, 572 U.S. at 419-420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)); Shoop v. Hill, 139 S.Ct. 504, 506 (2019) (same); Virginia v. LeBlanc, 137 S.Ct. 1726, 1728 (2017).  Habeas relief under section 2254(d)(1) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White, 572 U.S. at 427 (internal citation omitted); see Dorisca v. Marchilli, 941 F.3d 12, 17 (1st Cir. 2019) ("'federal habeas relief will be granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents'") (internal citations omitted); see also Shinn v. Kayer, 141 S.Ct. 517, 523 (2020) ("prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error'") (internal citation omitted); see generally Burt v. Titlow, 571 U.S. 12, 20 (2013) (stating that Court "will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy") (internal brackets and citation omitted).  "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009) (quoting Yarborough v. Alvarado, 541

U.S. 652, 664 (2004)) (brackets omitted).

## II.   Merits versus De Novo Review

The applicable standard of review depends on whether the SJC rendered a decision on the merits of the federal claim.   28 U.S.C. § 2254(d) (referring to adjudications "on the merits"); see Lyons v. Brady, 666 F.3d 51, 53-54 (1st Cir. 2012) ("'standard of review of the SJC's decision depends on whether that court "adjudicated on the merits" [of Lyons' due process] claim'") (internal citations omitted); Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009) (when "petitioner raises a federal claim during state proceedings that is not decided by the state court," court "reviews that claim de novo").   Section 2254(d), however, "'does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."'"   Johnson v. Williams, 568 U.S. 289, 298 (2013) (internal citation omitted).   Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   Harrington, 562 U.S. at 99; Johnson, 568 U.S. at 298 (quoting Harrington, 362 U.S. at 99).   The "limited circumstances" in which the presumption is rebutted, Johnson, 568 U.S. at 301, include when the state court relies on a procedural default.   See Harrington, 562 U.S. at

99-100 (stating that "presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely" and citing, as example, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)); <u>see also</u> <u>Kernan v. Hinojosa</u>, 136 S.Ct. 1603, 1605 (2016) (where "'last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits'") (quoting <u>Ylst</u>, 501 U.S. at 803); <u>Johnson</u>, 568 U.S. at 301-02 (surmising that "presumption that the federal claim was adjudicated on the merits may be rebutted . . . by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

As explained below, the <u>Harrington</u> presumption is not rebutted, except for the single error which the appeals court decided based on the independent and adequate state-law ground of a procedural default.[21]  Regarding the unrebutted errors, "if the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits." <u>Johnson</u>, 568 U.S. at 301.  Petitioner presented the prosecutorial

---

[21]  The single error arose from the prosecutor's comment that the victim had "'no reason to lie. She told the police that she was committing a crime and she told you the same thing.'" <u>Commonwealth v. Hallums</u>, 2016 WL 889181, at *1; (Docket Entry # 14, S.A. 374).

misconduct Sixth Amendment federal claim to the appeals court in conjunction with presenting the prosecutorial misconduct state-law claim. (Docket Entry # 14, S.A. 12-33). The factors cited by the appeals court to determine if a prosecutor's "argument was improper and requires reversal," Commonwealth v. Hallums, 2016 WL 889181, at *1 n.1 (citing Kater, 734 N.E.2d at 1180),[22] set out a state-law standard that is at "'least as protective of the petitioner's rights as its federal counterpart.'" Dagley, 540 F.3d at 15 n.3 (quoting Leftwich v. Maloney, 532 F.3d 20, 22 (1st Cir. 2008) (brackets omitted); Akarar v. Ryan, 270 F. Supp. 3d 423, 437 (D. Mass. 2017). Accordingly, the appeals court's decision on the alleged errors was on the merits, except for the above-noted single error.

Regarding the single error, the appeals court evaluated all of the alleged errors in the prosecutor's closing argument and

---

[22] The factors are: "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." Kater, 734 N.E.2d at 1180; Commonwealth v. Hallums, 2016 WL 889181, at *1 n.1 (quoting Kater, 734 N.E.2d at 1180). Regarding the first factor, the appeals court elaborates that "'the absence of an objection from experienced defense counsel is some indication that the tone, manner, and substance of the now challenged aspects of the prosecutor's closing argument were not unfairly prejudicial.'" Commonwealth v. Hallums, 2016 WL 889181, at *1 n.1 (quoting Commonwealth v. Taylor, 916 N.E.2d 1000, 1009 (Mass. App. Ct. (2009)) (brackets omitted).

found the single error based on the above-noted factors.[23]
Commonwealth v. Hallums, 2016 WL 889181, at *1 & n.1  The appeals
court *then* evaluated the impact of that single error under the
state-law miscarriage of justice standard.  Commonwealth v.
Hallums, 2016 WL 889181, at *1 ("We also conclude that the remark
that was improper did not create a substantial risk of a
miscarriage of justice."); id. at *2 ("All but one of the remarks
challenged by the defendant were proper.  We are confident that
the one statement that was improper did not affect the jury's
verdicts when viewed in context of both sides' closing arguments,
the evidence at trial, and the judge's instructions to the

---

[23]   The appeals court's determination of this single error by
applying these factors does not avoid the procedural default or
result in a decision on the merits relative to this error.  In
the alternative, even if the appeals court did, in fact, consider
the merits of the federal claim as to this single error, the
appeals court's decision was neither contrary to nor an
unreasonable application of clearly established law.  The appeals
court applied a rule consistent with the applicable clearly
established Supreme Court law as opposed to contrary to this
rule.  See Dagley, 540 F.3d at 8, 15, 15 n.3, 17; see also
Taylor, 983 F.3d at 572-573.
    Turning to the unreasonable application prong under section
2254(d)(1), the prosecutor's argument was in response to defense
counsel's closing argument attack on the victim's credibility,
including defense counsel's statements that the victim was "a
liar" and that "she lied on the stand" (Docket Entry # 14, S.A.
362).  See Darden, 477 U.S. at 182 (discussing invited-error
doctrine).  The trial judge instructed the jury that closing
arguments are not evidence.  (Docket Entry # 14, S.A. 380).
Viewed in the context of the entire trial, the appeals court's
decision regarding the comment was not an unreasonable
application of the applicable clearly established law, i.e., an
error that "'so infect[s] the trial with unfairness as to make
the resulting conviction a denial of due process.'"  Id. (quoting
Donnelly, 416 U.S. at 643).

24

jury."). The appeals court's explanation at the outset further confirms that the court first assessed whether the prosecutor's various remarks were error and, only thereafter, assessed if the improper remark created a miscarriage of justice. The first paragraph of the decision states, "At trial the defendant did not object to the closing argument; therefore we review to determine whether, *if there was error*, it created a substantial risk of a miscarriage of justice."[24] Commonwealth v. Hallums, 2016 WL 889181, at *1 (emphasis added). Immediately thereafter, the appeals court summarizes its decision that all of the alleged errors in the prosecutor's remarks, except one, were not errors: "We conclude that all but one of the challenged remarks was proper. We also conclude that the remark that was improper did not create a substantial risk of a miscarriage of justice."[25] Commonwealth v. Hallums, 2016 WL 889181, at *1. Accordingly, this court examines the single error as a procedural default and the remaining errors on the merits under section 2254(d)(1), to which this court now turns.

---

[24]  This explanation comports with the presentation by the Commonwealth in its appellate court brief, which states, "'We review *first* for error, and reach the question of impact on the jury *only* if error is shown.'"  (Docket Entry # 14, S.A. 59) (quoting Commonwealth v. Halstrom, 996 N.E.2d 892, 902 (Mass. App. Ct. 2013)) (emphasis added).

[25]  The second sentence is quoted previously for emphasis.

III.   Section 2254(d)(1) Review of Appeals Court's Decision[26]

The Supreme Court's decisions in Donnelly 416 U.S. at 643, and Darden, 477 U.S. at 181, set out the clearly established federal law as determined by the Supreme Court that applies to a prosecutorial misconduct claim based on a prosecutor's closing argument absent the implication of "a specific right in the Bill of Rights." Kirwan v. Spencer, 631 F.3d 582, 589 (1st Cir. 2011) ("*Darden* and *Donnelly* . . . provide the relevant Supreme Court law"). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643); Taylor, 983 F.3d at 572 (same). The clearly established Darden "standard requires 'case-by-case determinations,' Parker v. Matthews, 567 U.S. 37, 48, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012), about factors like the nature and seriousness of the comments, *whether the comments were invited by defense arguments*, whether the jury was adequately instructed, and the weight of the evidence, see, e.g., Darden, 477 U.S. at 181-82, 106 S.Ct. 2464." Hardy v. Maloney, 909 F.3d 494, 501 (1st Cir. 2018) (emphasis added); accord Taylor, 983

---

[26]   Although the SJC summarily denied the ALOFAR, this court applies a rebuttable presumption that the SJC's decision rested on the same grounds articulated in the reasoned decision of the appeals court and evaluates the latter decision as setting out the unarticulated grounds of the SJC's decision.  See Shinn, 141 S.Ct. at 524 n.1.

F.3d at 573 (setting out these factors in addressing clearly established law under <u>Darden</u>, 477 U.S. at 182).

Both <u>Darden</u> and <u>Donnelly</u> consider factors similar to those in <u>Kater</u>, <u>see</u> <u>Dagley</u>, 540 F.3d at 15 & n.3, which the appeals court considered and applied, <u>see</u> <u>Commonwealth v. Hallums</u>, 2016 WL 889181, at *1-2 & n.1. The appeals court also considered whether the defense counsel's argument invited the prosecutor's statements, which is another factor "used in <u>Darden</u>." <u>Taylor</u>, 983 F.3d at 572-73 (summarizing clearly established federal law as determined by Supreme Court law regarding improper prosecutorial statements for habeas petition). In adjudicating the federal claim, the appeals court therefore applied the correct Supreme Court rule, and the analysis reduces to whether the court unreasonably applied this clearly established federal law as determined by the Supreme Court.

As previously explained, petitioner identifies three instances of improper argument on the part of the prosecutor: vouching for the victim's credibility; appealing to the sympathies and emotions of the jury; and using rhetorical questions. (Docket Entry # 1-1, pp. 1, 9-22). Overall, the appeals court examined each of these instances, as grouped and presented by petitioner (Docket Entry # 14, S.A. 20-33), and in this manner reasonable applied the <u>Darden</u> standard to each of the prosecutor's purportedly improper remarks. <u>See</u> <u>Taylor</u>, 983 F.3d

at 572 ("state court must assess" propriety of each "allegedly improper prosecutorial statement[]" to reasonably apply "Darden standard" under section 2254(d)(1)); Commonwealth v. Hallums, 2016 WL 889181, at *1-2.

A.   Jury Emotions

Turning to the allegedly improper comments appealing to the jury's emotions, the appeals court concluded that the purportedly improper statements that "the victim was scared and hurt" were not "appeals to sympathy and passion but rather consisted of remarks that the prosecutor made based on the evidence, or fair inferences that the prosecutor could ask the jury to draw." Commonwealth v. Hallums, 2016 WL 889181, at *1.  In so doing, the appeals court found that "[t]he evidence showed that the victim was scared and hurt," id., a finding that petitioner fails to rebut.  See 28 U.S.C. § 2254(e)(1).

Under clearly established federal law as determined by the Supreme Court, context matters in determining if a *misstatement* of the *evidence* "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181-183 (finding that "prosecutors' argument did not manipulate or misstate the evidence") (internal citation omitted); United States v. Young, 470 U.S. 1, 11 (1985); see Kirwan, 631 F.3d at 589 (in considering whether closing argument violated due process, Court in Darden "noted that" closing

28

"summation 'did not manipulate or misstate the evidence'").
Clearly established law also precludes a prosecutor from making
an impermissible emotional appeal "wholly irrelevant to any
facts," Viereck v. United States, 318 U.S. 236, 247 (1943), in a
closing argument suggesting "that jurors have a civic duty to
convict."  Taylor, 983 F.3d at 574 (setting out clearly
established Supreme Court law and citing Viereck, 318 U.S. at
247-248 & n.3); accord Viereck, 318 U.S. at 247 (in closing
argument, prosecutor "indulged in an appeal wholly irrelevant to
any facts or issues in the case, the purpose and effect of which
could only have been to arouse passion and prejudice").

The prosecutor did not misstate the evidence or render an
unconstitutional appeal to the juror's emotions.  As explained in
footnotes seven and nine and the referenced text in the factual
background, the evidence reflects that the victim was scared and
hurt.  With regard to the prosecutor's comments that the victim
"'had a very troubled life,' '[s]he was desperate,' and 'she was
vulnerable,'" the appeals court noted that "defense counsel had
referred to the victim as 'desperate' several times during his
closing argument."  Commonwealth v. Hallums, 2016 WL 889181, at
*2 (brackets in original).  More noteworthy, the appeals court
determined that because "the victim had testified that she was a
drug addict, the statements were fair inferences that the
prosecutor could suggest to the jurors."  Id.  Here again, the

comments do not misstate the evidence as noted in footnotes four and five and the referenced text in the factual background.  On the night in question, the victim was walking up and down Union Street in the middle of winter engaging in prostitution to get enough money for her "next fix" of drugs.  (Docket Entry # 14, S.A. 315).  For the small sum of "[t]en dollars and a bag of weed," she agreed to perform oral sex with a stranger.  (Docket Entry # 14, S.A. 302-303).  For a "couple dollars" more, she agreed to engage in vaginal sex.  (Docket Entry # 14, S.A. 303).  She also struggled with addiction "on and off" during the previous 20 years.  (Docket Entry # 14, S.A. 297).  The prosecutor's description of the victim and her circumstances thus corresponded with the evidence and reasonable inferences therefrom.

Furthermore, the prosecutor's comments that the victim was "desperate," "scared," and "vulnerable" and therefore offered petitioner a refund (Docket Entry # 14, S.A. 375) responded to defense counsel's argument challenging the veracity of the victim's testimony that she offered him a refund (Docket Entry # 14, S.A. 365-366).  As such, the comments comport with Darden's clearly established law that a prosecutor's comments "invited by defense argument" are "[a]mong the factors" "to consider," Taylor, 983 F.3d at 572, in "determin[ing] their effect on the trial as a whole."  Darden 477 U.S. at 182.  In the context of

the trial judge's repeated instruction that closing arguments are not evidence (Docket Entry # 14, S.A. 359, 380), another factor the Supreme Court in <u>Darden</u>, 477 U.S. at 182, and <u>Donnelly</u>, 416 U.S. at 643-44, used to evaluate whether the prosecutor's comments violate due process, as well as the relative weight of the evidence against petitioner, <u>see</u> <u>Darden</u> 477 U.S. at 182, the appeals court's decision as to all of these challenged remarks was not an unreasonable application of the <u>Darden</u> standard that provides habeas relief "if improper statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Taylor</u>, 983 F.3d at 572 (quoting <u>Darden</u>, 477 U.S. at 181, as "clearly established law").

B. <u>Vouching and Rhetorical Questions</u>

The appeals court viewed the vouching comments in the prosecutor's closing argument as a "fair response to the defendant's closing argument" which "advanced a strong challenge to the victim's credibility." <u>Commonwealth v. Hallums</u>, 2016 WL 889181, at *1. The vouching comments also "consisted of reasons, based on the evidence, that the jury could use to determine that the victim was telling the truth." <u>Id.</u> Similarly, the appeals court explained that the prosecutor's language in the rhetorical questions "was directed toward refuting defense counsel's assertion in his closing that the witness was fabricating her testimony." <u>Id.</u> at *2.

31

As noted above, clearly established law includes viewing a prosecutor's comments during closing argument in context.  <u>Young</u>, 470 U.S. at 11 ("criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context").  The invited-response doctrine also applies in examining the effect of the prosecutor's comments "on the trial as whole," <u>Darden</u>, 477 U.S. at 182.  See <u>Young</u>, 470 U.S. at 11-12 (summarizing "holding" in <u>Lawn v. United States</u>, 355 U.S. 339 (1958)); <u>Taylor</u>, 983 F.3d at 572 (setting out whether "defense argument" invited prosecutor's statements in explicating <u>Darden</u>'s clearly established law as determined by Supreme Court).  The Court in <u>Lawn</u> held that in response to defense counsel's assertion in closing argument "that the Government's key witnesses were perjurers," the prosecutor in a closing argument "response *vouched* for the credibility of the challenged witnesses, telling the jury that the Government thought those witnesses testified truthfully."  <u>Young</u>, 470 U.S. at 11 (emphasis added).  In concluding that the prosecutor's remarks, when viewed within the context of the entire trial, did not deprive the petitioner of a fair trial, the Court in <u>Lawn</u> emphasized that defense counsel's "'comments clearly invited the reply.'"  <u>Young</u>, 470 U.S. at 11 (quoting and summarizing "holding" in <u>Lawn</u>, 355 U.S. at 359-60, n.15).  Similarly, the Court in <u>Darden</u> deemed the

prosecutor's comments[27] improper but not a due process violation in part because the prosecutor's argument "was invited by or was responsive to the opening summation of the defense." Darden, 477 U.S. at 182 (further stating that "idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole") (internal citation omitted); see Hardy, 909 F.3d at 502-503.

    With respect to both the vouching and rhetorical questions, the prosecutor's comments were in response to defense counsel's repeated and constant attack on the victim's credibility in defense counsel's closing argument.[28]  The rhetorical questions posed by defense counsel in closing argument (Docket Entry # 14, S.A. 362, 365-367) also invited the prosecutor to employ the same rhetorical device.  The purportedly improper vouching comments and rhetorical questions did not misstate the evidence.  Rather, the challenged statements by the prosecutor in these categories derive from the evidence and reasonable inferences therefrom.

    Additional factors that elucidate Darden's clearly

---

    [27]  The improper comments by the prosecutor include: describing the defendant "'as an animal'"; suggesting "'[h]e shouldn't be out of his [prison] cell unless he has a leash on him,'"; asking the jury "'to give [defendant] death'" as "'the only way [the prosecutor]'" could be sure the defendant could not "'get out on the public'"; and wishing he (the prosecutor) could see the defendant "'with no face, blown away by a shotgun.'" Darden, 477 U.S. at 180 nn. 10-12 (internal citation omitted).

    [28]  See footnotes 12, 14, 16, and 17 and the referenced text in the factual background.

established law support the conclusion that the appeals court's decision was not an unreasonable application of clearly established law.  Shortly after the prosecutor's closing argument, the trial judge instructed the jury that closing arguments are not evidence.  (Docket Entry # 14, S.A. 380).  The weight of the evidence favored the victim more than petitioner.  See Darden, 477 U.S. at 182.  Finally, "the Darden standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"  Parker, 567 U.S. at 48 (internal citation omitted).

In conclusion and viewing the record in its entirety, the appeals court's decision is not an unreasonable application of the Darden standard that warrants habeas relief when improper statements "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643).

IV.  Procedural Default

Respondent contends that the three instances of alleged misconduct during the prosecutor's closing argument are subject to procedural default.  (Docket Entry # 23).  Petitioner fails to raise an argument to the contrary because he did not file an opposition to respondent's memorandum opposing the petition.

Because petitioner "did not object to the closing argument" of the prosecutor, the appeals court considered whether the

single erroneous remark it found "created a substantial risk of a
miscarriage of justice." Commonwealth v. Hallums, 2016 WL
889181, at *1.  In conclusion, the appeals court expressed
confidence "that the one statement that was improper did not
affect the jury's verdicts when viewed in context of both sides'
closing arguments, the evidence at trial, and the judge's
instructions to the jury." Id. at *2; see Commonwealth v.
Johnson, 711 N.E.2d at 582 (in assessing miscarriage of justice
when "defense counsel did not object to the prosecutor's closing
argument," court examines statement "'"in light of the entire
argument, the judge's instructions, and the evidence at trial"'")
(internal citations omitted).  As explained, the appeals court
therefore applied the miscarriage of justice standard only to
this single comment it deemed an error.[29]

A long standing rule bars federal courts from reviewing
state court decisions that rest on "independent and adequate
state ground[s]." Trest v. Cain, 522 U.S. 87, 89 (1997).
Federal habeas review is therefore "precluded if there is an
independent and adequate state law ground supporting the state
court's decision." Lee v. Corsini, 777 F.3d 46, 54 (1st Cir.
2015).  "A state procedural rule is *adequate* to preclude federal
merits review 'so long as the state regularly follows the rule
and has not waived it by relying on some other ground.'" Id.

---

[29]   Footnote 21 sets out the erroneous comment.

(quoting <u>Jewett v. Brady</u>, 634 F.3d 67, 76 (1st Cir. 2011))
(emphasis added).  The First Circuit routinely concludes "'that
the Massachusetts requirement for contemporaneous objections is
an independent and adequate state procedural ground, firmly
established in the state's jurisprudence and regularly followed
in its courts.'"  <u>Hodge v. Mendonsa</u>, 739 F.3d 34, 44 (1st Cir.
2013) (applying waiver to theory of admissibility of statements);
<u>Janosky v. St. Amand</u>, 594 F.3d 39, 44 (1st Cir. 2010) (noting,
with respect to challenged jury instruction in robbery case,
that, "Massachusetts requirement for contemporaneous objections
is an independent and adequate state procedural ground, firmly
established in the state's jurisprudence and regularly followed
in its courts"); <u>Lynch v. Ficco</u>, 438 F.3d 35, 45 (1st Cir. 2006).

Furthermore, the appeals court's review of the claim under
the miscarriage of justice standard "does not amount to a waiver
of the state's contemporaneous objection rule."[30]  <u>Janosky</u>, 594
F.3d at 44.  Consequently, federal habeas review of the
prosecutorial misconduct claim is foreclosed unless petitioner
shows cause and prejudice or a fundamental miscarriage of
justice.  <u>See</u> <u>Lee</u>, 777 F.3d at 58 (federal court may review
procedurally defaulted claim if "petitioner demonstrates cause
for the default and prejudice resulting therefrom, or" or that

---

[30]  See footnote 23 *supra*, which sets out the alternative
ruling.

failure to consider "'federal claim will result in a fundamental miscarriage of justice'") (internal citation omitted); Janosky, 594 F.3d at 44-46.

As to cause, ordinarily the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); Lee, 777 F.3d at 58-59. Objective factors external to the defense may arise when, for example, "the 'factual or legal basis for a claim [was not] reasonably available to counsel,' or" when "'some interference by officials'" impeded counsel's efforts. Yeboah-Sefah, 556 F.3d at 76 n.14 (quoting Murray, 477 U.S. at 488). Here, no such external impediment prevented defense counsel from objecting to the prosecutor's closing argument. Simply because defense counsel "'failed to recognize the factual or legal basis for a claim' does not in and of itself 'constitute cause for a procedural default.'" Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012) (internal citations omitted).

"[C]onstitutionally ineffective assistance of counsel, at trial or on direct appeal, in failing to preserve a claim for review may constitute cause for default." Lee, 777 F.3d at 59. Defense counsel's failure to object to the prosecutor's closing argument, however, was not ineffectiveness within the meaning of the Sixth Amendment. The ineffective assistance of counsel

standard is "'highly deferential,'" and it requires the
petitioner "to 'overcome the presumption that the challenged
action might be considered sound trial strategy.'" Pena v.
Dickhaut, 736 F.3d 600, 605 (1st Cir. 2013) (internal citation
and ellipses omitted); Strickland v. Washington, 466 U.S. 668,
689 (1984) (recognizing "strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance").  In the case at bar, the prosecutor honed his
argument to the evidence and reasonable inferences therefrom.
The majority of his argument was in response and invited by
defense counsel's closing argument and strong attack on the
victim's credibility.  The claim that the prosecutor's comments
violated due process was not a clear winner, and the decision not
to object to the prosecutor's closing argument falls within the
realm of trial strategy.  As such, it lies well within the
parameters of effective assistance under the Sixth Amendment.

Failing to establish cause, there is no need to address the
prejudice prong.  See Magee v. Harshbarger, 16 F.3d 469, 472 (1st
Cir. 1994) (declining to address prejudice prong "[b]ecause the
cause and prejudice requirement is conjunctive").  Even without
a showing of cause and prejudice, a federal "court may excuse a
procedural default if the petitioner can demonstrate that a
failure to consider his claim will work a fundamental miscarriage
of justice."  Janosky, 594 F.3d at 46; accord Lee, 777 F.3d at

62.  The "exception is narrow and applies only in extraordinary circumstances—circumstances in which a petitioner makes some showing of actual innocence."  Janosky, 594 F.3d at 46; accord Lee, 777 F.3d at 62 (miscarriage of justice exception is "'narrow,'" "'seldom'" used, and "'tied to a showing of actual innocence'") (internal citations omitted).  The facts belie the existence of actual innocence in light of the victim's testimony and the evidence recovered at the scene consistent with that testimony.  In light of the procedural default, the prosecutorial claim based on the single error found by the appeals court fails to warrant habeas relief.[31]

CONCLUSION

In conclusion, this court **RECOMMENDS**[32] that the motion to deny the petition in respondent's opposition (Docket Entry # 23) be **ALLOWED** and that the petition (Docket Entry # 1) be dismissed.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[31]  Because the forgoing recommended rulings bar habeas relief, it is not necessary to address respondent's remaining arguments.

[32]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.